## DARRAGH COMPANY *v.* GOODMAN.

## Opinion delivered June 26, 1916.

1. BANKS AND BANKING—DEPOSIT OF MONEY—TITLE—RELATION OF BANK TO CUSTOMER.—A general deposit of money in a bank passes the title immediately to the bank and establishes the relation of debtor and creditor between the bank and its customer, the depositor.

2. BANKS AND BANKING—DRAFT FOR COLLECTION—TITLE.—A bank receiving a draft for collection merely, is the agent of the remitter, drawer or forwarding bank, and takes no title to the paper, or the proceeds when collected, but holds the same in trust for remitting.

3. BANKS AND BANKING—DRAFTS FOR COLLECTION—RELATION BETWEEN DRAWER AND COLLECTING BANK.—Plaintiff bank drew drafts on D., and sent the same to defendant bank for collection. Defendant bank collected the drafts, and sent exchange on the C. bank to the drawer bank in payment. Before the drawer bank collected the same, the defendant bank failed, but at the time of failure had cash on hand sufficient to cover the amount due the drawer bank. *Held*, the funds collected·from the D. Co. upon the drafts of the drawer, bank, did not become the property of the collecting bank, nor establish the relation of debtor and creditor for the amount thereof between it and· the drawer bank, and that the relation of principal and agent continued and the collecting bank having failed before the payment of its check or the presentation thereof for payment in due course of business, the drawer bank was entitled to the· proceeds of the collected drafts out of the defunct bank's cash going into the hands of the receiver in preference to general creditors.

4. PRINCIPAL AND AGENT—COLLECTION OF OBLIGATION DUE PRINCIPAL—BANKS.—An agent having for collection an obligation due to his principal, can receive only money in payment unless otherwise directed, and this rule applies to a bank holding a draft for collection.

5. BANKS ANS BANKING—PAYMENT OF DRAFT—PAYMENT BY CHECK.—The payment of a draft by the drawee by the delivery of his check therefor against his account in the collecting bank, and the charging of the amount against his account in the collecting bank, constitutes a payment in cash of the draft, the check being merely the vehicle of transfer of the cash.

6. BANKS AND BANKING—COLLECTION OF DRAFT—FAILURE OF COLLECTING BANK—RECOVERY BY DRAWER BANK.—The drawer bank may recover the amount of a draft collected by the collecting bank, as against creditors of the latter, where the collecting bank failed before turning over the amount collected to the drawer bank, where the collecting bank had more money on hand each day it continued business after the collection of the drafts, than the amount thereof, the same amounting to a sufficient identification of the proceeds of the collected draft.

Appeal from Grant Chancery Court; *Jethro P. Henderson,* Chancellor; reversed.

These appeals involve the correctness of the decrees of the Pulaski and Grant Chancery Courts, the one requiring the receiver of an insolvent bank to pay from the moneys on hand at the time of its failure the full amount of certain drafts collected by it shortly before its failure to the drawer bank, to the exclusion of the general creditors, and the other denying the drawer of the draft such right to the payment of the amount collected out of the cash assets of the defunct bank, and have been consolidated for hearing.

It appears from the agreed statement of facts that the First National Bank of Atchison, Kansas, sent drafts with bills of lading attached on F. J. Darragh Company of Little Rock, to the State National Bank for collection. This bank, of which the Darragh company were customers, presented the drafts on June 15, 1914, and they were paid by said company's check on the collecting bank which charged the checks against the account of the payer and sent its draft on the National Bank of Commerce of St. Louis to cover the collection. Immediately upon receipt of the exchange, the Kansas bank forwarded it to St. Louis for collection, but before it reached there the State National Bank had suspended business and payment of the draft was refused by the St. Louis bank because of the failure of the drawer.

During the day and at the close of business of said June 15, 1914, the State National Bank had on hand the sum of $32,429.54 in cash. When it closed its doors on June 19, it had cash on hand only to the amount of $7,052.77, which went into the hands of the receiver, who took charge of the assets of the bank. Said sum was the lowest amount of cash the defunct bank had on hand at any time after the collection of the drafts. It continued business regularly to the time of closing its doors on June 19, 1914.

The court held the collection constituted a trust fund and ordered it paid out of the cash going into the hands of the receiver to the exclusion of the general creditors of the bank.

In No. 4200, the Darragh company of Little Rock, on June 8, 1915, sent its draft on M. A. Davis of Leola, Ark., to the Bank of Leola for collection, with the direction contained in its circular letter, "Please collect this item for us on arrival of goods and remit proceeds in Little Rock exchange, with your usual promptness."

On the 13th day of January, the Bank of Leola collected the draft and issued its "cashier's check" payable to the order of the Darragh company for the amount, and mailed it to said company. On the next day, the Darragh company deposited the said cashier's check in the England National Bank of Little Rock for collection, but the Leola bank failed and its affairs were taken charge of by John M. Davis, State Bank Examiner, on June 15, before said cashier's check could in due course be collected. The defunct bank had more cash on hand at the time it was taken charge of by the examiner than the amount collected on the draft, and had not had a less amount since the collection.

*Coleman & Lewis,* for appellant; *H. M. Trieber,* of counsel.

1. Under the facts of this case, only the relation of debtor and creditor existed. 93 Tenn. 353; 27 S. W. 669; 25 L. R. A. 523. Where paper is deposited with a bank for collection, such bank is an agent until the proceeds are received by it. It may then credit the proceeds to the depositor and establish the relation of debtor and creditor. 14 S. Dak. 512; 86 Am. St. 769, and note 797-8; 3 R. C. L., § 262, p. 634. It is not essential that the forwarder be a depositor; the rule is the same where the proceeds are not to be deposited, but remitted to the customer by draft. 3 R. C. L., § 261, p. 633; 95 Tenn. 579; 49 Am. St. 940; 32 L. R. A. 715, and note.

2. The funds of the bank were not augmented by the collection of the drafts. Checks of third parties on a bank with which they are depositors, which are paid by crediting the bank and charging the drawers on its books, do not increase the cash in bank and present no basis for a preference to the depositor. 3 R. C. L., § 268, p. 639; 78 N. Y. 269; 34 Am. St. 532; 69 Miss. 759; 30 Am. St. Rep. 585; 56 Fed. 759; 64 Atl. 923; 53 N. W. 923; 71 S. W. 977; 86 Am. St. 769, and note, 804, 806, 807, etc.

3. A decision of this case involves the construction of the National Bank Act and should follow the construction of the act by the Federal courts. 194 Fed. 593; 8 C. C. A.; 1 Enc. U. S. Rep. 548; 73 U. S. 628; 172 *Id.* 425.

*Hinton & Rogers* and *Comer & Clayton,* for First National Bank and F. J. Darragh *et al.; G. F. Williams* and *Grover T. Owens,* for Darragh *et al.*

1. The draft was not deposited generally and treated as cash, but was sent for collection and remittance. The bank had no title; the intention of the parties will prevail as to ownership of the proceeds. 49 Neb. 786; 59 Am. St. 572; 14 S. D. 512; 86 Am. St. 769, and note, ¶¶ 2 and 3, p. 782 and ¶ 1, p. 786. The bank did not take title to the proceeds of the draft. 49 Neb. 786; 59 Am. St. 572; 86 *Id.* 769, and note. See 136 Fed. 90; 134 *Id.* 724; 145 Atl. 146; 118 Ill. App. 491.

*Moore, Smith, Moore & Trieber,* for appellee, in Darragh v. Goodman; *Coleman & Lewis,* of counsel.

In the absence of any agreement to the contrary, a collecting bank becomes the owner of the money collected, and is under obligation to pay or remit the amount; the relation of debtor and creditor is established. Here remittance was requested in Little Rock exchange, which authorized the Bank of Leola to substitute its own obligation, hence there was no trust. 93 Tenn. 353, 25 S. W. 669, 25 L. R. A. 523. This case is directly in point. See also 104 Ark. 560.

KIRBY, J., (after stating the facts). It is contended on the one hand that only the relation of principal and

agent existed between the collecting bank and the drawer of the drafts collected and that the amount collected remained the property of the drawer, a trust fund which the receiver could be required to account for to the exclusion of the general creditors, and on the other that only the relation of debtor and creditor was created by the transactions and the drawers of the drafts were not entitled to any preference payment out of the cash assets of the defunct bank.

(1) No principle of law is better established than that a general deposit of money in a bank passes the title immediately to the bank and establishes the relation of debtor and creditor between the bank and its customer, the depositor. *Covey* v. *Cannon*, 104 Ark. 550, 149 S. W. 514, 518; *Warren* v. *Nix*, 97 Ark. 374; *Steelman* v. *Atchley*, 135 S. W. 902, 98 Ark. 294; 3 R. C. L. 261; *Merchants' & Planters' Bank* v. *Meyer*, 56 Ark. 499, 20 S. W. 406; *Plano Mfg. Co.* v. *Auld*, 14 S. Dak. 512, 86 N. W. 21, 86 Am. Rep. 769, and note; *Carroll County Bank* v. *Rhodes*, 69 Ark. 43, 63 S. W. 68.

(2) It is likewise well established that a bank receiving a draft for collection merely, is the agent of the remitter, drawer or forwarding bank, and takes no title to the paper or the proceeds when collected, but holds same in trust for remitting. *Second National Bank* v. *Bank of Alma*, 99 Ark. 386; *Okla. State Bank* v. *Bank of Central Arkansas*, 120 Ark. 369, 179 S. W. 509; 3 R. C. L., p. 633; 3 Am. Enc. of L., p. 815; 5 Cyc., p. 514; *Macy* v. *Roedenbeck*, 227 Fed. 346, 353, and other authorities cited on appellees' brief.

(3) There is no question in either of these cases but that the drafts were sent for collection only, with the expectation that the proceeds should be remitted immediately upon the receipt thereof by the collecting bank and nothing indicating that the parties intended that the drafts or proceeds should not remain the property of the owner. Such being the case, we hold that the deposit by the State National Bank of the funds collected from the Darragh company upon the drafts of the Kansas bank

did not become the property of the collecting bank nor establish the relation of debtor and creditor for the amount thereof between it and the drawer bank and that the relation of principal and agent continued and the bank having failed before the payment of its check or the presentation thereof in due course of business for payment, the drawer was entitled to the proceeds of the collected drafts out of the defunct bank's cash going into the hands of the receiver in preference to the general creditors.

It is true, as contended, that the collecting bank was instructed by the drawer of the draft in No. 4200 to remit the proceeds in Little Rock exchange, but we do not think this indicated an intention upon its part that the bank should take the title to the proceeds nor consent that the relation of debtor and creditor should arise, but the intention rather that no such relation should be created. The bank was making the collection merely and the direction to remit immediately in Little Rock exchange shows unmistakably that the draft was sent for collection and that there was no intention of the drawer to receive credit from the bank, but an expectation that the proceeds would be immediately forwarded, and the suggestion, remit in Little Rock exchange was only to facilitate the receipt of the money, the drawer of the draft living in the city where such exchange would be payable and relieve the necessity for forwarding the check or draft used as a medium of payment for collection.

It is contended further by appellant that even if it shall be held that the relation of debtor and creditor did not arise between the collecting bank and the owner sending the drafts for collection, that since the collections were made in fact by the receipt of a check from the drawee against its account in the collecting bank and the charge of the amount thereof against same, that no money in fact was received nor the cash assets of the bank thereby increased and that therefore the funds of the bank coming into the hands of the receiver could not be impressed with the trust for the payment of the proceeds

of the draft collected. We do not agree to this contention.

(4) It is uniformly held that an agent having for collection obligations due to his principal, can receive only money in payment unless otherwise directed, and these principles of course apply to banks holding drafts for collection. 1 Am. Enc. of L. 1037; 3 Am. Enc. of La. 804; 3 R. C. L. 616, 635 and 640; *Ward* v. *Smith,* 7 Wall. 447; *Fritz* v. *Stover,* 22 Wall. 208; *Briggs* v. *Collins,* 113 Ark. 190; *Groom* v. *Neff Harness Co.,* 79 Ark. 401; *Bradley Lumber Co.* v. *Bradley County Bank,* 206 Fed. 41.

Our court has held in its construction of the law prescribing a penalty against the officers of insolvent banks for receiving moneys on deposit when the bank is known to be insolvent, that the receipt by the officer of a check drawn by a customer against his account in the bank and depositing it to the credit of the account of the payee, another customer, was receiving money within the meaning of the law. *Cunningham* v. *State,* 115 Ark. 392; *Skarda* v. *State,* 118 Ark. 176.

In *Daniel* v. *St. Louis National Bank,* 67 Ark. 223, 54 S. W. 214, the court held that where a bank had sent a note to a correspondent bank for collection and the latter, which had the makers money on deposit with instructions to pay it on the note, charged the amount thereof to the maker and credited it to the sender of the note in the regular course of business, it constituted a payment of the note, notwithstanding the bank failed the next day and returned the note without endorsement or accounting for the collection.

In 3 R. C. L. 641, it is said: "And a collecting bank may, as between the payor and holder of paper, receive a check of the payor upon the bank or a certificate of deposit held by him in payment, since the payor should not be required to go through the idle ceremony of withdrawing the money from the bank and paying it back to the bank."

(5) The payment by the drawee of the draft of the amount thereof by the delivery of its check therefor

against his account in the collecting bank and the charging of the amount against his account, constituted to all intents and purposes a payment in cash of the drafts, the check being merely the vehicle of transfer of the cash.

Certainly there is no necessity for the drawee of the drafts to take its check to its bank, the collector, and present it and receive the money and hand it back to the bank in payment of the draft.

(6)   The testimony shows that the bank had more money on hand each day it continued business after the collection of the drafts than the amount thereof and that the lowest amount it had on hand thereafter and which went into the hands of the receiver was more than $7,000, and under the rule announced by this court in *Covey* v. *Cannon*, 104 Ark. 550, this showing is a sufficient identification of the proceeds of the collected draft and tracing them to the possession of the receiver.

It follows that the decree of the Pulaski Chancery Court is correct and is affirmed and of the Grant Chancery Court is erroneous, and the same is reversed and the cause remanded with direction to enter a decree for the amount of the draft claimed by appellant.